SMITH *v.* GAGE.

*(Circuit Court, N. D. Illinois.* April 24, 1882.)

1. TAX TITLE—VALIDITY—BURNT RECORDS ACT—PROCEEDINGS.

The circuit court has jurisdiction to consider and pass upon the validity of a claim of title under a tax deed accrued subsequent to the destruction of the records, in an action by bill to restore title under the burnt records act. The practice in such cases stated.

2. ACTUAL POSSESSION—NOTICE OF TIME TO REDEEM.

Where a party was in actual possession of the premises, it is the duty of the person seeking to obtain title through a tax sale to serve personal notice on the occupant of the premises of the expiration of the time to redeem from the tax sale to render the tax deed valid.

**3. SAME—DUTY TO PAY TAXES AND ASSESSMENTS.**

> A party in the possession of land, to whose benefit has enured the payment of subsequent taxes and assessments upon such land by a party who holds a tax deed therefor, should not have the tax title set aside except upon such terms as will reimburse the holder of the tax title for the money he has paid for the purpose of protecting the property.

**4. CLOUD ON TITLE—REMEDIES.**

> Where complainant seeks in a court of equity relief from a tax deed which is a cloud on the title to her land, she should pay the amount required to redeem the land, with interest from the time of redemption, as a condition precedent to her right to relief. At law her remedy is by action of ejectment.

*Monroe & Leddy*, for complainant.

*A. N. Gage*, for defendant.

BLODGETT, D. J. This bill was originally filed by the complainant in the state court, under what is termed the "Burnt Records Act," for the purpose of restoring the complainant's title; the allegations being in substance that the complainant had a title in fee to the lot mentioned in the bill, deducible by a chain of conveyances from the United States to herself, all of which were of record in the recorder's office of Cook county, Illinois, and that by the destruction of the records of the county in the great fire of October, 1871, all these recorded evidences of title had been destroyed, and that she had lost her original deed, and therefore had no paper evidence of title on which to base her claim to the property. She made various persons parties to the suit, among whom was Asahel H. Gage, who, she charged, claimed some title to the property. The case came to this court, and Gage answered here, setting out in substance that he holds a tax title to the property, which was obtained under a tax sale for the first instalment of the South park assessment, the sale having been made on the eleventh of October, 1873, for the assessment of 1872, and the tax deed having been made to him March 3, 1876.

There has been no resistance to the complainant's case, except as to whether this tax title can be attacked in this form of proceeding, and as to the validity of this tax deed; complainant having, by an amended bill, charged that the assessment was illegally made, the sale illegally conducted, and the deed void for want of proper notice of the time when the redemption would expire.

As to the jurisdiction of the court to consider and pass upon the validity of this tax title in this form of proceeding, this defendant's claim of title under his tax deed having accrued subsequent to the destruction of the records, I at first had some doubts, but a more careful examination of the statute authorizing this form of action has

led me to the conclusion that complainant may, in this action, attack defendant's subsequently-acquired title, and my reasons for this conclusion are briefly these:

The act provides (section 16, *c*. 116, Rev. St. Ill.) that the petition or bill for restoration of title shall set out—

*First.* The extent of the estate in the land in question claimed by the complainant or petitioner, and from whom, when, and in what mode he derived his title thereto. He shall give the names of all persons owning or claiming any estate in fee in said lands, or any part thereof, and also all persons to whom any such lands have been conveyed, and the deed or deeds of such conveyances as shall have been recorded in the office of the recorder of deeds since the time of the destruction of such records, and prior to the filing of such petition, and their residence, so far as the same are known.

*Second.* All persons so named in the petition shall be made defendants, and shall be notified of said suit by summons, or by publication of notice in the same manner as may be required in chancery proceedings in this state.

*Third.* By section 18 any person interested may oppose such petition, may demur to or answer the bill, or file a cross-bill, if he desires to do so.

*Fourth.* By section 20 it is declared that it shall be competent for the court, by its decree in such cases, to determine in whom the title in any or all of the lands described in the petition is vested, whether in the petitioner or any other of the parties before the court.

Here, it will be seen, is ample provision for bringing all claimants to any title or interests in the lands before the court, and it is made the duty of the court to determine in which of the persons so before it the title is vested. It seems to me to have been the purpose of the legislature to make this proceeding a sort of drag-net into which all conflicting claimants of title or interest in the land might be drawn, and where the court, with all the parties before it, should determine their respective rights. It is not limited to titles or claims which accrued before the destruction of the records, but in express terms provides that "all persons to whom such lands shall have been conveyed, and the deed or deeds of such conveyance shall have been recorded in the office of the recorder of deeds of such county, since the destruction of the records," shall be made parties to the proceedings, evidently intending that the petitioner must bring in all persons who appear of record to have any deed or conveyance of any interest in the land, so that their respective titles or claims may be considered and passed upon. It is further provided that unknown owners or claimants may be brought in under the designation of "all whom it may concern;" and the decree rendered in such proceeding is to be final and conclusive, unless appealed within a certain time limited by the act, except as to persons in actual possession of the premises, or persons to whom

the lands have been conveyed, and whose deeds have been recorded since the destruction of the records, and prior to the time of filing the petition, who are not made defendants by name.

It is possible that the court, on the final hearing of such a case, may in its discretion as a court of equity, where two conflicting titles are represented, the validity of which can be determined in a court of law, by the express terms of this decree remit the parties holding such titles to a court of law for a trial of their rights; but this would be purely a matter of equitable discretion, and does not limit the power of the court in this proceeding to settle the entire title by its decree.

As to the validity of this tax deed, no proof is offered showing that the assessment was not regularly and legally made, and the judgment properly rendered against the land for default of payment, nor that the sale was not legally conducted; but the only point insisted upon at the hearing was that the deed was void for want of proper notice to the occupant of the land of the time when the redemption would expire.

It is conceded that the holder of a certificate of purchase of its tax sale, assuming that there was no person in possession or occupation of this land, and that the person in whose name it was assessed could not be found in the country, caused a notice of the time of the purchase at such tax sale, and when the redemption would expire, to be published in a newspaper not more than five months nor less than three months before the time of redemption would expire, and on filing proof of the publication of such notice, an affidavit to the effect that the land was unoccupied, and the person in whose name the land was assessed could not be found in the county, with the county clerk, the tax deed in question was issued; but complainant contends that this land was in fact at the time of this tax sale, and until after the execution and delivery of this tax deed, in the actual possession of a Mrs. McCarthy, and the conflicting proof in the case is all centered around the nature and extent of her occupation of the premises. I think the result of the proof is to show that some years prior to this assessment and tax sale the husband of Mrs. McCarthy had built a house on the lot adjoining the lot now in question, and enclosed a portion of the lot in question as a garden and yard,—his enclosure taking in about 30 feet in the front of the lot, and extending back in a diagonal line so as to take in six or ten feet of the rear,—and some of the out-buildings or appurtenances of the McCarthy premises were erected on this lot.

McCarthy, it seems, had died before this tax sale, and his widow and family had remained in possession. The fence had become somewhat out of repair, and proof was put in on the part of defendant tending to show that it had ceased to be an enclosure; but I think the clear preponderance of the proof is that a portion of this lot was, at the time this notice was published, in the actual possession and occupancy of Mrs. McCarthy, and within her enclosure; that the fence was sufficiently in repair to indicate and maintain such possession; that an intruder into the portion of the lot within this enclosure would have been a trespasser upon Mrs. McCarthy's possession. True, the proof does not show that Mrs. McCarthy was the tenant of this complainant, or of any person through whom the complainant claims title, but I think we must assume she was there with the knowledge and perhaps by the permission of the owner of the fee. She was certainly "an occupant" within the meaning of the constitution and statutes of this state. Section 5, art. 9, Const. 1870, and section 216, c. 120, Rev. St. Ill.

It was the duty of the person seeking to obtain a tax title, under a sale for tax or assessment, to serve personal notice on such occupant as a condition precedent to the issue of a valid tax deed; but this complainant has come into a court of equity seeking not only to have her own title established, but also to have this tax title set aside as a cloud upon her title; and under the familiar principle that he that seeks equity must do equity, I think this court should not set this tax title aside and declare it void except on condition that complainant pay the amount required to redeem the premises when the time for redemption expired, and interest thereon at the rate of 6 per cent. per annum since that time, and also pay all taxes and assessments which the defendant Gage has paid on said premises since his purchase, together with interest thereon at 6 per cent.

It may be urged that a tax title is only to be obtained *strictissima juris*, and that the defendant, not having complied with the conditions precedent required by the constitution and statute, must be held to have forfeited the inchoate title acquired by his purchase, and this would probably be the rule in a suit in an ejectment upon the facts as I find them here; but the fact is also palpable that the holder of this tax title has paid this assessment—that this payment and that of the subsequent taxes and assessments have enured to the benefit of this complainant, and she should not have this tax title set aside except upon such terms as will reimburse the defendant for

the money he has paid for the purpose of protecting her property. The complainant was not obliged to file this petition. She could, if she had chosen so to do, have brought ejectment, made parol proof of her title, and contested the validity of this tax deed at law; but she has preferred to come into a court of equity to get relief, and must make the defendant whole, as I think, to the same extent as if she had redeemed in apt time from the tax purchase.