# GORMLEY *v.* CLARK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

No. 192.   Submitted January 27, 1890. — Decided March 17, 1890.

Upon the construction of the constitution and laws of a State this court, as a general rule, follows the decisions of the highest court of the State, unless they conflict with, or impair the efficacy of some provision of the Federal Constitution, or of a Federal statute, or a rule of general commercial law; and this is especially the case when a line of such decisions have become a rule of property, affecting title to real estate within the State.

When a Circuit Court of the United States in Illinois obtains jurisdiction in equity of a proceeding to establish title to real estate under the act of the legislature of that State of April 9, 1872, known as the "Burnt Records Act," in a case within the provisions of the act, it may, following the decisions of the courts of the State, proceed to adjudicate and determine in equity all the issues between the parties relating to the property, as well those at law as those in equity; and it is entirely within its discretion whether it will or will not send the issues at law to be determined by a jury.

It is no error in a court of equity to order buildings removed from a tract of land over which a party to the record has a right of way for ingress to and egress from his own property.

MICHAEL GORMLEY, the appellant, on the 5th day of March, 1874, made a subdivision, into blocks and lots, of certain property within the limits of the village of Glencoe, Cook County, Illinois, entitled "Gormley's Addition to Glencoe": acknowledged the plat before a justice of the peace; and had it certified to by the county surveyor, and duly recorded in the recorder's office of said county. He derived title to so much of the property as is involved in this case under a warranty deed from his father, Marcus Gormley, the patentee, dated May 4, 1861, and recorded in the office of said recorder June 5th of that year. On the 15th of May, 1877, Gormley and his wife executed a trust deed, which was duly recorded, to one Loeb as trustee, conveying certain blocks and lots in Gormley's addition to Glencoe, to secure a promissory note

described therein, which trust deed was duly acknowledged, and released in due form of law all homestead rights of the grantors in the property conveyed. The premises were subsequently sold under the powers of sale in the trust deed for default in payment, and conveyed by deeds dated September 10, 1878, some of the blocks to Edward Clark, a block and some of the lots to Sarah J. Condon, and some to others. Edward Clark died October 14, 1882, and Alfred Corning Clark acquired title to the portion conveyed to him, as his sole heir at law. On the 29th day of March, 1884, Sarah J. Condon conveyed the premises deeded to her to Alfred Corning Clark, who, by that conveyance, and as heir to Edward, became the owner of blocks 3, 4, 5, 8 to 24 inclusive, and lots 3, 4, 5, 6, 11 and 12 in block 6, in Gormley's addition to Glencoe, in the county of Cook and State of Illinois.

By the charter of the village of Glencoe, it was provided that printed or written copies of all ordinances passed by the council of the village should be posted up in at least three of the most public places therein, within thirty days after their passage, and should take effect at the expiration of ten days after such posting. On the 4th day of October, 1881, on a petition signed by Michael Gormley, the council of Glencoe vacated Adams Street, between Grove Street and Bluff Street, in Gormley's addition, which ran between blocks 8 and 9 of that addition, and upon which Gormley's house, barn and outbuildings then stood. This portion of the street formed the means of ingress and egress to some twenty-four lots in these two blocks. The ordinance was posted and a certified copy filed in the recorder's office by Gormley on October 17, 1881. On the 3d of January, 1882, the council of Glencoe passed an ordinance, which was in Gormley's own handwriting, vacating some ten streets and parts of streets in Gormley's addition, which surrounded the property in controversy, and the evidence tended to show that this was done upon representations made by Gormley that he owned the property through which the streets passed, and that, at all events, such was the belief of the members of the council in taking the action in question. On the 12th day of January, 1882, the vote

on the passage of the ordinance was reconsidered, and again reconsidered on January 24, 1882 ; and on the 7th of February, 1882, the council passed an ordinance providing "that any and all ordinances heretofore passed by this council, vacating any streets or parts of streets in Gormley's addition to Glencoe, or purporting so to do, are hereby repealed, and all the streets and parts of streets shown in the first and originally recorded plat of said addition are hereby declared to be public streets." The ordinance of January 3, 1882, was never posted by the clerk, and although the charter required ordinances to be entered at length in an ordinance book, neither the ordinance of October 4, 1881, nor that of January 3, 1882, nor any of the repealing or rescinding resolutions or ordinances, were entered at length in such book. Shortly after the passage of the ordinance of January 3, 1882, Gormley applied to the clerk of the village to post the ordinance, and the clerk replied that he should take the full time allowed him by law to do so, namely, thirty days. He also applied for a certified copy of the ordinance, but the clerk did not give it to him. He then copied the minutes of the meeting of January 3, 1882, and posted such copy and made oath thereto, January 24, 1882, and filed the same on that day in the recorder's office of Cook County. On the 17th of January, 1882, Gormley filed in the Superior Court of Cook County, Illinois, a petition for a mandamus upon the clerk of the village to immediately post certified copies of the ordinance passed on January 3, 1882, as required by law, and to file for record, in the recorder's office of Cook County, a duly certified copy of the ordinance, or to furnish to him (Gormley) a duly certified copy upon tender of his legal fees. This petition was answered by the clerk, and a replication filed, and the cause tried, a jury being waived, by Gary, J., who rendered judgment dismissing the petition at Gormley's costs. The case was taken to the Appellate Court for the First District of Illinois, by which court the judgment of the Superior Court was affirmed. After the commencement of this action, Gormley sued out from the Supreme Court of Illinois a writ of error to review the judgment of the Appellate Court, and the judg-

ment of that court was thereupon affirmed. *Gormley* v. *Day*, 114 Illinois, 185.

Gormley sold several lots and blocks of his subdivision to different parties; put down sidewalks, and threw up various streets with a plough; street and sidewalk work in the addition was done by the village; and portions of various streets were graded and ditched. After the foreclosure the taxes upon the premises in dispute were paid by Alfred Corning Clark.

On the 31st of March, 1884, Clark filed his petition under the "Burnt Records Act," so called, Session Laws 1871–2, 652, being chapter 116 of the Revised Statutes of Illinois, setting up his title to the property in controversy; alleging the destruction of the records of Cook County and of his record title on October 8 and 9, 1871, by fire; the proceedings of the council of the village of Glencoe, of the clerk, and of Michael Gormley; and the suits in the Superior and Appellate Courts; and charging fraud on Gormley's part and threatened irreparable injury; averring that Gormley was in possession of petitioner's land and about to destroy its market value by procuring a vacation of the streets around it; and asking that council and clerk be enjoined. Petitioner made the village of Glencoe, its council and clerk, Michael Gormley and wife and others, who had claimed some interest in the property, parties, "and all whom it may concern," and prayed that the ordinances of October 4, 1881, and January 3, 1882, be declared null and void and of no effect whatsoever, and for a decree confirming and establishing his title in fee simple to the lots and blocks mentioned as aforesaid, and that he be put in possession; and that the village, its council and clerk, be restrained from passing or posting any ordinance or ordinances vacating streets or parts of streets adjoining petitioner's lots and blocks. Many of the defendants defaulted, and some answered, including Gormley and wife, upon whose answer the only questions in issue here arose. Upon hearing, the court entered a final decree in favor of Clark, adjudging that he was, at the date of filing the petition, vested with title in fee simple absolute to the premises in dispute, and confirming and establishing the same; that Gormley was estopped from claim-

ing any informality or defect in the plat of his addition to Glencoe; that he and his wife had no homestead rights in any of the lots and blocks decreed to Clark, or in any streets or parts thereof on which any of the said lots or blocks abutted, as against said Clark, his representatives, heirs and assigns; that the ordinance of January 3, 1882, was null and void; that title to that portion of Adams Street, between Grove Street and Bluff Street, was vested in Gormley, but subject to an easement in the use of it by said Clark, his heirs, legal representatives and assigns, as the owner of lots or parts of lots abutting thereon; that said Gormley and wife remove from that portion of Adams Avenue on or before a date named; and in default of such removal the marshal remove the buildings thereon located; and that possession of the property in dispute be surrendered to petitioner. The decree dissolved a preliminary injunction which had been granted against the village and its authorities, and awarded no relief in respect to them.

From this decree Gormley appealed to this court, and assigned as errors (1) that the court erred in not dismissing the bill for want of equity; (2) that petitioner had a complete and adequate remedy at law, and a court of chancery had no jurisdiction; (3) that the court erred in decreeing void the ordinance vacating said streets in said Gormley's addition to Glencoe; (4) that the court erred in decreeing that said Michael and Eliza Gormley remove their house, barn and shop from said portion of Adams Avenue, between Grove and Bluff streets; (5) that the court erred in decreeing to the petitioner an easement in the right of use of Adams Avenue, between Grove and Bluff streets, as a street, by said petitioner; (6) that the court erred in decreeing the petitioner entitled to the possession of said lots and blocks in said petition described; (7) that the court erred in decreeing that the appellant surrender up possession of said streets, lots and blocks to the petitioner.

*Mr. Morton Culver* and *Mr. Millard F. Riggle* for appellant.

The Burnt Records Act was passed for the purpose of establishing and confirming titles to property — the title of which

had become insecure by the great Chicago fire. It was not intended to take the place of ejectment proceedings, and deprive a man of his right of trial by jury, except in cases where the remedy at law was inadequate, or when the prime purpose of the petition was to establish the title to real estate rendered thus insecure.

When the prime purpose of the petition is to evict a man from premises he is in the adverse occupancy of, a court of chancery will, by right, refuse its aid when the remedy is adequate in a court of law.

The trust deed from Gormley, its foreclosure, and the subdivision and ordinance complained of, are all acts which have occurred since the fire, and so far as the rights of the petitioner were concerned he could have obtained them without any evidence relating back to the fire. The right to possession being purely a question for a jury, a court of chancery should have refused to take jurisdiction. *Lewis* v. *Cocks*, 23 Wall. 466; *Killian* v. *Ebbinghaus*, 110 U. S. 568; *Fussell* v. *Gregg*, 113 U. S. 550.

The Supreme Court of Illinois has decided that under the Burnt Records Act, a complainant out of possession may file a petition against a defendant in possession; but these cases can be regarded in no other light than in special instances when the remedy at law is inadequate.

This doctrine is in conflict with the entire principle of equity practice, for under the general principles of chancery jurisdiction to remove a cloud or to confirm or establish titles, a complainant out of possession could not file a petition against a defendant in possession; and if the act in question can be sustained only on the ground that it applies to all cases, regardless of the question, " Is there an adequate remedy at law ? " then the act is unconstitutional because it would deprive the defendant of his right to trial by jury. The constitutionality of the act can be sustained on the principle that it is only intended to supply a loss when courts of law have not the remedy to grant the relief sought. See *Holland* v. *Challen*, 110 U. S. 15.

There was no relinquishment or waiver of the homestead of said Michael Gormley, it being that part of Adams Avenue

between Grove and Bluff streets, upon which this house and barn stand, and where he has resided for over forty years, and the court clearly erred when it decreed said Gormley to surrender up possession and remove his buildings therefrom, or be evicted by the United States marshal. The homestead, unless expressly waived, would be paramount to any easement that appellee could have ever acquired. The Circuit Court expressly decrees the legal title to said slip of ground in Michael Gormley. Under what process of reasoning, can it decree away the homestead which he has never relinquished or abandoned?

The petitioner out of possession and the appellant in possession, it cannot be said that appellant obstructed the street. To have acquired an easement it was necessary for appellant to be in possession of the property, to which, and from which, he claimed the right of easement of the appellant's premises.

In *Cooper* v. *Detroit*, 42 Michigan, 584, it is held that where a highway has been extinguished, it can only be renewed in the same way that would turn other lands into public highways. After the passage of the ordinance vacating the streets the fee reverted immediately to the appellant. The acts of the village in this respect were either legal or illegal. If legal, no court has the power to set them aside. If illegal they are void, and would be so held by a court of law; and consequently there is no necessity for resorting to a court of equity.

The decree goes further than the petition or bill will warrant. There is no prayer or allegation contained in the bill warranting the court to decree the appellant to surrender the possession of the strip of land occupied by him as a homestead. The bill or petition seeks the possession of certain lots and blocks, and not the intervening space between any such lots or blocks, and I submit to this honorable court, without further argument, that under the prayer for general relief, a court cannot legally decree one party to surrender to another the possession of land not specifically asked in the bill.

*Mr. Charles E. Pope, Mr. Alexander McCoy* and *Mr. Charles B. McCoy*, for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Upon the 8th and 9th of October, 1871, a memorable conflagration destroyed a large part of the city of Chicago, including the court-house and the entire records of the county of Cook, in the State of Illinois, in which the city of Chicago was situated. An act was thereupon passed by the general assembly of that State, appro. ed April 9, 1872, to remedy the evils consequent upon the destruction of public records. Laws Illinois 1871–2, p. 652, which act is now chapter 116 of the Revised Statutes of Illinois. 2 Starr and Curtis, 1993. That act provided that in case of such destruction, the courts of the county wherein it occurred, having chancery jurisdiction, should have power to inquire into the condition of any title to or interest in any land in such county, and to make all such orders, judgments and decrees as might be necessary to determine and establish said title or interest, legal or equitable, against all persons known or unknown, and all liens existing on such lands, whether by statute, mortgage, deed of trust or otherwise; that it should be lawful for any person claiming title to any lands in the county at the time of the destruction of its records, and for all claiming under such person, to file a petition in any court in the county having chancery jurisdiction, praying for a decree establishing and confirming his said title, which petition should set out the character and extent of the estate in the land in question claimed by the complainant or petitioner, and from whom and when and by what mode he derived his title thereto; the names of all persons owning or claiming any estate in fee in, or who should be in possession of, said lands or any part thereof, and also all persons to whom any such lands had been conveyed, and the deed or deeds of such conveyance recorded in the office of recorder of deeds since the time of destruction of the records and prior to the filing of the petition; and their residences, so far as the same were known; that all persons so named in the petition should be made defendants and notified of the suit by summons or publication in the same manner as required in chancery pro-

ceedings in the State, unknown owners or claimants to be brought in under the designation of "to whom it may concern;" that any person interested might oppose the petition, demur to or answer it, or file a cross-petition if he desired to do so; and that the decree entered in the proceeding should be, as to the title found, forever binding and conclusive, except against minors and insane persons, and persons in possession or to whom the lands had been conveyed and the deeds recorded since the destruction of the records and prior to the filing of the petition, and not made parties defendant by name. The act also contained various provisions in protection of married women, insane persons and minors, and all defendants not served with summons were given one year after entry of decree to ask its vacation on petition; and the rules and regulations governing courts of chancery in Illinois were declared to apply to proceedings under the act, so far as not inconsistent therewith.

By numerous decisions of the Supreme Court of the State of Illinois it has been determined that a petition to establish title under what is known as the "Burnt Records Act," need not show that the petitioner was in possession of the land or that it was vacant and unoccupied, as required in a bill to quiet title, the act authorizing the petitioner to make all parties in possession or claiming an interest in the land parties defendant to the petition, creating a clear and marked distinction between a case of this character and such a bill; that the court is authorized and required to investigate the interest of all the parties in the premises in question, and to decree in favor of the better title; that all that is required in respect to adverse claimants or their titles is, that such claimant shall be named in the petition and made defendant; that nothing more is required to give the court jurisdiction under the statute to investigate the claims of title to the premises, and by its decree establish and confirm the title in the person in whom it is found to be vested, and to make all such orders, judgments and decrees as shall be necessary to that end; that decrees so entered are, as to the title so found, forever binding and conclusive between the parties; that the statute was in effect a

statute of limitations, and under the circumstances was not unreasonable, but demanded as a matter of safety in a great emergency; that it was not open to the objection of unconstitutionality, because not providing for trial by jury or otherwise; and that the question whether a jury should be allowed could not arise unless a jury was demanded.   *Gage* v. *Caraher,* 125 Illinois, 447; *Heacock* v. *Hosmer,* 109 Illinois, 245; *Heacock* v. *Lubuke,* 107 Illinois, 396; *Robinson* v. *Ferguson,* 78 Illinois, 538; *Bradish* v. *Grant,* 119 Illinois, 606; *Bertrand* v. *Taylor,* 87 Illinois, 235.

The subject received much consideration from Judge Blodgett, holding the Circuit Court for the Northern District of Illinois, in *Smith* v. *Gage,* 11 Bissell, 217, 220, in which he announced substantially the same conclusions.   And he remarks "that the court, on the final hearing of such a case, may, in its discretion as a court of equity, where two conflicting titles are presented, the validity of which can be determined in a court of law, by the express terms of its decree, remit the parties holding such titles to a court of law for the trial of their rights; but this would be purely a matter of equitable discretion, and does not limit the power of the court in this proceeding to settle the entire title by its decree."   In *Gage* v. *Caraher, ubi supra,* the Supreme Court of Illinois says: "Whatever may be the power of the court of chancery, where there are controverted titles, to restore, by its decree, the evidences of title in the respective parties as they were before the destruction of the record, and then, in its discretion, remit the parties to a court of law to there try their titles, it is manifest no such course was contemplated by the statute, or necessary in cases under it."   p. 452.   In *Ward* v. *Farwell,* 97 Illinois, 593, 613, in passing upon the right to demand a trial by jury in the particular instance there in hand, it is justly observed : "Where a new class of cases are, by legislative action, directed to be tried as chancery causes, it must appear that, when tested by the general principles of equity, they are of an equitable character, and can be more appropriately tried in a court of equity than in a court of law.   And if of this character, when brought in a court of equity they stand

upon the same footing with other causes, and the court will have the right, as in other cases, to determine all questions of fact without submitting them to a jury."

Upon the construction of the constitution and laws of a State, this court, as a general rule, follows the decisions of her highest court, unless they conflict with or impair the efficacy of some provision of the Federal Constitution, or of a Federal statute, or a rule of general commercial law. *Norton* v. *Shelby County*, 118 U. S. 425, 439. And this is so where a course of those decisions, whether founded on statutes or not, have become rules of property within the State ; also in regard to rules of evidence in actions at law; and also in reference to the common law of the State, and its laws and customs of a local character when established by repeated decisions. *Burgess* v. *Seligman*, 107 U. S. 20 ; *Bucher* v. *Cheshire Railroad Company*, 125 U. S. 555. Substantially conclusive effect is given to such decisions upon the construction of state statutes, as affecting title to real estate within the State. *Ridings* v. *Johnson*, 128 U. S. 212; *Bacon* v. *Northwestern Insurance Co.*, 131 U. S. 258 ; *Hanrick* v. *Patrick*, 119 U. S. 156, 169.

And while the rule is thoroughly settled that remedies in the courts of the United States are at common law or in equity, according to the essential character of the case, uncontrolled in that particular by the practice of the state courts, *New Orleans* v. *Louisiana Construction Co.*, 129 U. S. 45, 46, yet an enlargement of equitable rights by state statute may be administered by the Circuit Courts of the United States as well as by the courts of the State; and when the case is one of a remedial proceeding, essentially of an equitable character, there can be no objection to the exercise of the jurisdiction. *Broderick Will Case*, 21 Wall. 503, 520 ; *Holland* v. *Challen*, 110 U. S. 15, 25 ; *Frost* v. *Spitley*, 121 U. S. 552, 557.

Tested by the conclusions of the Supreme Court of Illinois, the principal contention on appellant's behalf cannot be sustained. The record of the patent and the deed from the patentee to Michael Gormley had been destroyed, and the deed, which it turned out on this hearing was in Gormley's posses-

sion, had never been re-recorded. The petitioner was entitled to the establishment of the record by the proceeding authorized under the statute, and, when the court had once acquired jurisdiction, it could go on and adjudicate upon all claims to the property in controversy, as therein provided. The character of the litigation sufficiently indicates that the petitioner legitimately invoked the aid of the statute.

It is strenuously insisted that the remedy at law was adequate, and that as the right of possession was purely a legal question and for a jury, the court of chancery should have declined jurisdiction; but, inasmuch as the case came withhm the provisions of the statute, and equity could alone afford the entire relief sought, the fact that dngal questions were also involved could not oust the court of jurisdiction. The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances, *Kilbourn* v. *Sunderland*, 130 U. S. 505, 514; and it is quite clear that under this statute the restoration of the record title is a matter essentially of equitable cognizance, while the declaration of the invalidity of the ordinance of January 3, 1882, the removal of the cloud caused by recording a copy thereof, and the abatement of the obstruction to the streets, were matters in respect to which, under the averments of the petition and the evidence adduced at the hearing, the petitioner could properly resort to a court of equity. Undoubtedly the rule that a bill may be retained for the purpose of granting full relief when jurisdiction exists, should not be abused by being employed as a mere pretext for bringing into chancery causes proper for a court of law; but under the local law, this could not be predicated of a petition which the petitioner was entitled to file under the "Burnt Records Act," and, as already stated, we administer, where adverse citizenship gives us jurisdiction of a case, the equitable relief which state legislation accords.

It is objected that there was error in the direction for the removal of the buildings from the portion of Adams Street between blocks eight and nine, in disregard of the homestead

rights of appellant and his wife; but we do not think so. Whether the plat was a statutory plat or not, as to which some issue is made by the answer, the proofs establish such a dedication as created an easement in the petitioner, the existence of which Gormley was estopped to deny, and which the court was justified in protecting. *Maywood Co.* v. *Village of Maywood,* 118 Illinois, 61.; *Zinc Company* v. *City of La Salle,* 117 Illinois, 411; *Littler* v. *City of Lincoln,* 106 Illinois, 353; *Hamilton* v. *Chicago, Burlington &c. Railroad,* 124 Illinois, 235.

The right of way, as appurtenant to these blocks and lots, passed to the purchasers under the sale upon the trust deed, which was executed by Gormley and his wife, and by which both had released the homestead claim, and the decree recognized the fee as still in Gormley subject to the burden thus imposed. *Trickey* v. *Schlader,* 52 Illinois, 78; *Kittle* v. *Pfeiffer,* 22 California, 485.

As to the remaining errors assigned, we are of opinion that the court correctly held the second ordinance duly annulled, and the easement as existing in the petitioner, so far as respected the property described in the first of the two ordinances referred to, and properly granted the writ of assistance to put the petitioner into possession of his blocks and lots as prayed; and while the bill did not specifically pray for similar relief in respect to the streets in question, such relief was agreeable to the case made by the bill, and could be awarded as within the prayer for general relief. The writ of assistance was simply in effectuation of the decree, and was in accordance with the recognized practice in equity and the ninth equity rule. We are satisfied upon the whole case that the Circuit Court committed no error, and the decree will therefore be

*Affirmed.*