### HOLT et al. v. RUSSELL.

Circuit Court of Appeals, Fifth Circuit.
February 6, 1929.

No. 5326.

Ben F. Cameron and A. S. Bozeman, both of Meridian, Miss., and Earl Welch, of Antlers, Okl., for appellants.

Robt. L. Bullard, of Hattiesburg, Miss., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. A life insurance company issued two policies, dated November 20, 1923, one in the sum of $10,000, and the other in the sum of $5,000, on the life of Henry Walker, the amount of each of the policies being made payable "to S. D. Russell, his business partner, if living at the time of said death, or to such other beneficiary as may be named by the insured as provided herein." Each of the policies contained the following provision: "The right is reserved to the insured during the continuance of this contract, provided it is not then assigned, to change the beneficiary or beneficiaries named by filing written request therefor at the Home Office of the Company. Such request must be accompanied by this policy and such change shall take effect only upon its indorsement thereon by the Company." After the death of the insured in September, 1926, the insurer in December, 1926, filed in the court below a bill which alleged that the proceeds of the two policies were claimed by S. D. Russell, the appellee, and by James A. Holt, the administrator of the estate of the insured, one of the appellants; that the insurer is indifferent between the claimants to said proceeds, and has deposited the amount thereof in the registry of the court to abide the judgment of the court; and prayed that said claimants be decreed to interplead. Claims to such proceeds were duly asserted by the two claimants mentioned. The claim asserted by the administrator of the insured's estate was to the effect that the policies were received by the appellee as security for a debt of the insured in the sum of $10,000, evidenced by his note, which was paid before his death, and that appellee held one or both of the policies as security for a subsequent loan of $2,000 to the insured, evidenced by his note for that sum and interest, which note remained unpaid. The claim asserted by appellee was to the effect that said policies were

procured by the insured and delivered to appellee pursuant to a contract between them, under which appellee was to have a specified interest in timber acquired in the name of the insured, whereby appellee had a continuing interest in the life of the insured while that contract was in course of performance, and that the insured had not accounted to appellee for the latter's interest in the timber referred to.

The two claimants offered evidence in support of their respective claims, that evidence consisting of testimony given in the presence of the court, and several letters written by the insured. Upon a consideration of that evidence, the court entered an interlocutory decree which contained findings to the effect that the true relation between appellee and the insured was that of creditor and debtor, that appellee held said policies as collateral security for the insured's debts to him, and not as absolute beneficiary, and that appellee was entitled to collect the proceeds of the policies, and would then be required to account to insured's estate for the excess after the payment of the secured debts. That decree ordered that an accounting be had between appellee and the administrator of the insured's estate, and that the cause be remanded to the docket for such further testimony as any party may desire to introduce, not only upon the matter of accounts, but upon all other issues involved in the cause. After the rendition of that decree, the widow of the insured applied to the court for leave to file a petition of intervention, which accompanied her application. Upon being notified of that application, the insurer consented to the proposed intervention, and that the court take such action in the premises as to it may seem best. The petition of intervention contained allegations to the effect that appellee received the policies as security for two debts of the insured to appellee, one in the sum of $10,000, evidenced by a note for that sum and interest, the other in the sum of $2,000, evidenced by a note for that sum and interest; that the note for $10,000 was paid in full before the death of the insured; and that petition asserted the claim that the petitioner was entitled to all of the proceeds of the policies except the amount thereof required to pay the principal and interest of the debt evidenced by the note for $2,000. The answer of the administrator of the insured's estate to the proposed intervening petition contained allegations to the effect that there were no unpaid debts of the insured other than his debt to appellee. After the introduction of additional evi-

dence, the court rendered a final decree which adjudged that the above-mentioned petition to intervene be denied, that as against the insurer the appellee, being the beneficiary named in said policies, is entitled to recover and receive the fund paid by the insurer into the registry of the court, but without prejudice to the rights of the administrator of the insured's estate, or his widow, to sue him for said proceeds or for an accounting, and that before receiving said fund appellee execute and file a prescribed bond with surety, conditioned to have said moneys forthcoming to abide any judgment or decree that may be rendered against appellee therefor in any suit that may be brought against him in any court by the administrator of the insured's estate and his widow, or either of them. That decree contained a statement to the effect that the real relation between the insured and the appellee was not adjudged. The administrator of the insured's estate and his widow appealed from that decree, and each of them by assignment of errors complains thereof.

The opinion which accompanied the rendition of the final decree shows that, though the court concluded not to adjudge as to the real relation between the insured and appellee, it remained convinced by the evidence that appellee received and held the policies as security for debts owing to him by the insured. It appears from that opinion that, in making the disposition of the case evidenced by the decree appealed from, the court was influenced by the decision in the case of Haberfeld v. Mayer, 256 Pa. 151, 100 A. 587. In that case one partner, while indebted to his copartner, obtained insurance on his life payable to his copartner, and after the dissolution of the partnership and the death of the insured, the proceeds of the policy were claimed by the personal representative of the insured and by the beneficiary named in the policy; the amount of such proceeds being more than the balance owing on the debt to the copartner at the time of the insured's death. The decision was in favor of the beneficiary, the opinion stating that there was no evidence from which it could be found that the insured took out the policy to secure a debt due to the named beneficiary. We think that the just-mentioned statement is enough to keep the decision in the cited case from being pertinent where the right of a beneficiary named in a policy to all of the proceeds of it is contested on the ground that he received or held the policy as security for a debt owing to him by the insured, and the evidence shows that the named beneficiary so received or held the policy, and that the

proceeds of it amount to more than the unpaid part of the secured debt. The testimony tending to prove that the policies were obtained by the insured pursuant to an agreement between him and the appellee under which appellee was to make a loan or loans to insured which were to be secured by policies on the latter's life was reinforced by letters of the insured to appellee.

After appellee, pursuant to that agreement, had advanced to the insured the sum of $10,000, and had received the insured's note for that sum and interest, indorsed by associates of the insured in the timber business in which he was engaged, the insured received the policies and sent to appellee a letter, dated December 28, 1923, which contained the following: "On account of so much rain and mud it has been impossible for me to come up to see you before going away. I am leaving tomorrow, but I will be back some time between the tenth and fifteenth of January, at which time we will prepare the agreement between you and myself with reference to the insurance policy. You understand the note has personal indorsement and if anything should happen to me the indorsers would pay the note. In fact, they are liable for the amount, and I am not liable personally; for this reason, if anything should happen to me the insurance would go to my wife. I am enclosing herewith the policies, and when I return we will prepare the agreement."

A letter from the insured to appellee, dated January 24, 1924, contained the following: "Per our conversation at Paulding a few days ago, I would like to get the additional two thousand dollars February first. If you remember, at the time we started negotiations on this transaction I told you I might need a little additional money after I got down here and got started. As stated to you a few days ago I find necessary to have this amount, and I hope that you can furnish same. You may write up your note and send it down together with your check, and I will sign the note and return it to you promptly."

A letter from the insured to appellee, dated February 18, 1924, contained the following:

"Some time ago I wrote you with reference to the additional two thousand dollars I wanted, but up to date have heard nothing from you. Now you understand that I have made all my arrangements with the expectation of getting this money. If you will recall, I told you at Paulding at the home of Mr. Street the last time we talked that I would need this money about the first of February.

"Thinking perhaps you failed to get my letter, I thot it best to write you again.

"Now, if it is possible for you to do so, I will appreciate it very much if you will send me this money, as I need it and expected to get it. As you will remember, I told you at the time I got the first ten thousand dollars that I would need a little additional money later on. If you will send your note down, together with the check, I will sign the note and promptly return it to you."

A letter from the insured to appellee, dated February 22, 1924, contained the following: "As per agreement, I wish you would have Street write up a contract between you and myself with reference to the insurance policy. In writing up the contract, we want it to recite that you have already been given ample security to cover the money loaned to me, and that in case of my death the money for the insurance will go to my wife instead of to you, unless the Walker-Jordan Lumber Company should fail to pay you the note which they indorsed. In the event they should fail to pay the note and I should die, then enough of the money to cover your note of ten thousand dollars and the interest would go to you, and the balance to my wife. Street can write this very easily, as it will not take a long contract to cover all the points. I will appreciate it very much if you will have him do this at once, sign the contract and forward same to me."

There was no evidence tending to prove that appellee replied to any of the abovementioned letters. The insured's note to appellee for $2,000, with interest, was dated March 11, 1924. A letter from the insured to appellee, dated January 1, 1926, contained the following:

"Enclosed please find cashier's check for $160.00 to cover interest on my note for $2,000.00 for another year. * * *

"I am enclosing to you herewith the paid receipts covering the premiums on the insurance policy's that you hold. I shall appreciate it very much if you will attach the enclosed receipts to the policys. I would like for you to send me the $10,000.00 [policy] and feel sure that you will for the reason that the $10,000.00 note has been paid. If you will do this you may hold the one $5,000.00 until I pay you the note for $2,000.00."

The check referred to in the last-mentioned letter was collected by appellee.

■■ We concur in the court's conclusion from the evidence that the policies were obtained and delivered to appellee to secure a

debt or debts of the insured to appellee. The letter of December 28, 1923, shows that they were tendered by the insured to appellee as security, and that the insured intended his wife to be the beneficiary if the secured debt was paid. It is to be inferred from the evidence that appellee accepted and retained the policies without questioning the terms on which they were tendered. The intention of the insured as to his wife being a beneficiary of the policies was again clearly disclosed in the letter of February 22, 1924. As above indicated, each of the policies conferred on the insured the right to change the beneficiary. The provision of the policies as to the method of effecting such change was one for the benefit of the insurer alone. The absence of any intention of the insurer to insist on a compliance with that provision was manifested by its consenting to the proposed intervention of the insured's widow and to the court taking such action thereon as it may deem best. As to any one other than the insurer, the acts of the insured, in disclosing his intention that his wife be the beneficiary of the policies so far as the proceeds thereof should not be required to pay debts to appellee secured thereby, were effective to accomplish the intended result. Arrington v. Grand Lodge of Brotherhood of R. Trainmen (C. C. A.) 21 F.(2d) 914. We conclude from the evidence that the widow of the insured became a beneficiary of each of the policies and was entitled to all of the proceeds thereof in excess of the amount required to satisfy the debt of the insured evidenced by his note to appellee for the sum of $2,000 and interest.

The proceeds of the policies were in the possession of the court. The parties asserting claims to that fund were before the court, which had jurisdiction of the parties and the subject-matter. It is proper for a court of equity having custody of a fund and jurisdiction of the parties asserting claims to it to proceed to a final disposition of such claims, thereby putting an end to further litigation. Gormley v. Clark, 134 U. S. 338, 10 S. Ct. 554, 33 L. Ed. 909; Pease v. Rathbun-Jones Eng. Co., 243 U. S. 273, 37 S. Ct. 283, 61 L. Ed. 715; Ober v. Gallagher, 93 U. S. 199, 23 L. Ed. 829. We are of opinion that that course should have been pursued in the instant case, that the proposed intervention of the widow of the insured should have been allowed, that the court should have adjudged that the relation between appellee and the insured was that of creditor and debtor, that appellee held the policies as security, and that the claim asserted by the insured's widow be sustained.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.