## FEDERAL RESERVE BANK OF ATLANTA v. ANDERSON et al.

### No. 1276.

District Court, S. D. Florida, Tampa Division.

Oct. 12, 1932.

On Rehearing Oct. 31, 1932.

Colquitt, Parker & Troutman & Arkwright, of Atlanta, Ga., for plaintiff.

Sawyer, Cummings, Mook, Strong & Douglas, of Cleveland, Ohio, for defendants.

AKERMAN, District Judge.

In this cause a Federal Reserve Bank in Atlanta filed a bill of interpleader, alleging in substance that it had a fund of approximately $75,000 in its possession which was claimed by A. M. Anderson as receiver of the Central National Bank & Trust Company of St. Petersburg, Fla., and by the holders of certain checks which will be hereinafter more fully explained, and that it was in doubt as to whether the fund should be turned over to Anderson, receiver, or to the holders of such checks, and therefore prayed that the parties be required to interplead, and that it be exonerated upon payment of the sum to such parties as the court should find, to be entitled thereto. The propriety of the bill of interpleader has been admitted, and by consent of all parties the complainant has been permitted to retain the fund until the final decree of the court instead of paying it into the registry of the court, and the cause now comes on for final decree upon the pleadings, an agreed statement of facts, and testimony heretofore taken in the form of depositions.

There is no material dispute as to the facts in this case. The Federal Reserve Bank of Atlanta maintains a branch office in the city of Jacksonville, Fla., for the purpose of and convenience in dealing with the Florida banks, and the Central National Bank & Trust Company of St. Petersburg was a member bank. On April 15, 1931, the Jacksonville branch of the Federal Reserve Bank of Atlanta forwarded to the Central National Bank & Trust Company checks drawn on said Central National Bank & Trust Company in various sums aggregating approximately $75,000 for cancellation and remittance. On April 16, 1931, said checks drawn by various depositors on the Central National Bank & Trust Company of St. Petersburg were received at said bank and canceled and charged to the respective accounts of the drawers, and on said April 16, 1931, said Central National Bank & Trust Company drew its check on the Federal Reserve Bank of Atlanta in the sum of $75,080.96 in payment of the sums collected from the checks sent to it by the Jacksonville branch of the Federal Reserve Bank in Atlanta and mailed the same to the Jacksonville branch of the Federal Reserve Bank of Atlanta, and that the same was received at said Jacksonville branch at about 8 Eastern Standard time on the morning of April 17, 1931. At 10:05 a. m. Eastern Standard time the Central National Bank & Trust Company of St. Petersburg closed its doors, and thereafter the defendant A. M. Anderson was duly appointed receiver of said Central National Bank & Trust Company of St. Petersburg. The Federal Reserve Bank of Atlanta received notice in a short time thereafter both at its home office at Atlanta and at its Jacksonville branch of the closing of the doors of the Central National Bank & Trust Company. At the time of receiving such notice, it had not actually charged the amount of such

draft to the account of the Central National Bank & Trust Company, but at that time the Central National Bank & Trust Company of St. Petersburg had on deposit to its credit with the Federal Reserve Bank in Atlanta more than sufficient funds to pay said checks.

I am of the opinion that, although the Federal Reserve Bank had merely held for collection the checks originally drawn on the Central National Bank & Trust Company, it was authorized to charge to the account of the Central National Bank & Trust Company, in payment of such checks, the draft drawn by that bank on its account in the Federal Reserve Bank. Even though this check or draft had not actually been charged to the account of the Central National Bank & Trust Company at the time the Federal Reserve Bank received notice of the closing, it appears from the undisputed evidence in the case that the same had been presented for payment by mail at the Jacksonville office of the Reserve Bank prior to any notice of suspension and prior to the time when the St. Petersburg Bank actually suspended. I am of the opinion that, under these circumstances, equity would regard that as done which should have been done, and hence that the holders of the checks are entitled to the fund now before the court as against the claim of Anderson, as receiver of the Central National Bank & Trust Company.

I do not consider that the trust fund theory enters into this case, nor do I consider that the regulation of the Federal Reserve Board, given full effect according to its literal tenor, is in any way inconsistent with the legal principle involved. Counsel for the holders of the checks may prepare findings of fact and a decree in accordance with this opinion.

### On Petition for Rehearing.

The court, after a careful consideration of this case on September 27, 1932, filed an opinion wherein the court held that the fund in controversy should go to the holders of certain checks and not to the receiver of the Central National Bank & Trust Company of St. Petersburg. Upon learning that the Federal Reserve Bank was apprehensive for fear that this opinion held invalid certain regulations of the Federal Reserve Bank, the court, on October 12, 1932, filed a supplemental opinion which was intended to clarify the situation, but now, prior to the entry of a final decree, the receiver of the Central National Bank & Trust Company of St. Petersburg has presented to the court a petition for rehearing in which it is contended, among other things, that the regulations of the Federal Reserve Bank of Atlanta should control the determination of this case.

The court at no time has had the slightest intention of declaring any of the regulations of the Federal Reserve Bank invalid, and, if this were a suit by the holders of the checks in controversy against the Federal Reserve Bank, I have no doubt that the Federal Reserve Bank could sufficiently defend such suit by pleading the regulation, but such regulations were adopted for the protection of the Federal Reserve Bank, and, when the Federal Reserve Bank by its bill of interpleader disclaimed any interest in the fund in controversy, I am of the opinion that it thereby waived any benefit under the regulations which were adopted for its protection. Arrington v. Grand Lodge of Brotherhood of Railroad Trainmen (C. C. A.) 21 F.(2d) 914, and Holt v. Russell (C. C. A.) 30 F.(2d) 597.

By the previous opinion of the court, the court intended to hold, and does now hold, that, as between the holders of the checks in controversy and the receiver of the Central National Bank & Trust Company, in equity the holders of the checks had a better title to the fund than the receiver, or, in other words, that, the checks having been sent to the Federal Reserve Bank for collection, the Federal Reserve Bank had sufficient title to the checks to authorize it to charge the check drawn by the Central National Bank & Trust Company against its account in the Federal Reserve Bank to the account of the Central National Bank & Trust Company and remit the fund to the holders of the checks.

If the Federal Reserve Bank of Atlanta had held absolute title to the checks in controversy, it would undoubtedly, under the circumstances, have charged the check of the Central National Bank & Trust Company drawn on it in payment of these checks to the account of said Central National Bank & Trust Company, and would have been legally justified in doing so, and the court sees no reason why it should not have done so for the benefit of the owners of the checks in controversy.

The petition for rehearing will be filed with the clerk as part of the record and denied.