**MUTUAL LIFE INS. CO. OF NEW YORK
v. ILLINOIS NAT. BANK OF SPRING-
FIELD, ILL., et al. (MACKIE, Intervener).**

No. 139.

District Court, E. D. Michigan, S. D.

Aug. 5, 1940.

Miller, Canfield, Paddock & Stone, of Detroit, Michigan, for plaintiff.

George E. Brand, of Detroit, Mich., and Brown, Hay & Stephens and Robert A. Stephens, Jr., all of Springfield, Ill., for Illinois Nat. Bank.

Lucking, VanAuken & Sprague, Laurence M. Sprague, and Ellsworth W. Allison, all of Detroit, Mich., and Henry A.

Converse and William L. Patton, both of Springfield, Ill., for Springfield Marine Bank, executor.

Bisbee, McKone, Badgley & Kendall and M. F. Badgley, all of Jackson, Mich., for Donald M. Mackie and Donald M. Mackie, guardian ad litem.

Clifford M. Blunk, of Springfield, Ill., for intervening defendant Maud H. Mackie.

TUTTLE, District Judge.

The plaintiff, Mutual Life Insurance Company of New York, an insurance company, has filed its bill of interpleader in this court and has paid into court the proceeds of a $25,000 life insurance policy issued on the life of Arthur D. Mackie, deceased. Donald M. Mackie, the only son, and the Springfield Marine Bank, executor of Mr. Mackie's estate, were named in the bill of interpleader as rival claimants to the proceeds of the policy. The Illinois National Bank was named as a defendant on account of the fact that it held an assignment of a part of the proceeds of the policy as collateral security. The minor children of Donald Mackie were named because at one time they had been mentioned as contingent beneficiaries. Maud Mackie, the widow of Arthur D. Mackie, sought and obtained leave to intervene as a party defendant, her interest arising out of and through the estate of Arthur D. Mackie, and her position in the case being identical with that of the executor bank.

At the conclusion of the case, this court dictated an informal opinion from the bench and discussed the facts at some length, as will appear in the record. For that reason, no extended discussion of the facts is made in this opinion.

The policy issued by the plaintiff, the proceeds of which are the subject of this controversy, was in the amount of $25,000 and was issued in 1923 on the life of Arthur D. Mackie. In 1927, the beneficiaries in this policy were designated as Nancy Jane Mackie (the only child of the insured by his second wife, Maud Mackie), if living, if not living, her issue; failing issue, Donald M. Mackie (who was the only child of the first marriage); and failing him, the administrators or executors of Donald M. Mackie. The policy was so payable until July, 1936, at which time Mr. Mackie changed the beneficiary, eliminating all the contingent beneficiaries, so that Nancy Jane Mackie was the sole named

beneficiary thereof. The occasion for this change was the solicitation of the Illinois National Bank of a loan to Arthur D. Mackie with which to pay off then existing policy loans which he had theretofore incurred upon this and other policies. The insurance company, plaintiff, refused to allow an assignment of the policy to the Illinois National Bank as collateral security without all the beneficiaries and contingent beneficiaries joining in the assignment. The amount of the policy loan then due on the policy in question was $6,055.75, which amount was borrowed from the Illinois National Bank. An assignment, joined in by Nancy Jane Mackie, was given to that bank as its interest might appear, and the policy loan paid off. Mr. Mackie also had loans in the amount of $20,266.46 against policies in the Northwestern Mutual Life Insurance Company, and the Franklin Life Insurance Company, which were also taken up by moneys advanced by the Illinois National Bank. The Northwestern policy in the amount of $55,000 was assigned in the same manner and the Franklin life policy was made payable directly to the bank, as trustee, for the express purpose of application on the loan.

Nancy Jane Mackie, the daughter, died without issue in December, 1936. In April, 1937, Arthur D. Mackie made a will which in substance divided his estate equally between Maud Mackie, the widow, and Donald Mackie, the son, and named defendant Springfield Marine Bank as executor. At about the same time, the local agent of the Northwestern Mutual Life Insurance Company prepared forms for change of beneficiary of the Northwestern and Mutual Life policies, which forms protected the security interest of the Illinois National Bank. The form for changing the beneficiary of the Northwestern Mutual Life Insurance Company policy named Maud Mackie as beneficiary and Donald Mackie as contingent beneficiary. The form for changing the beneficiary of the Mutual Life Insurance Company policy designated Donald Mackie as beneficiary, with his children, Catherine Mackie and Marilyn Mackie, as contingent beneficiaries.

These forms were executed by Arthur D. Mackie and sent to the respective companies with the policies. The Mutual Life Insurance Company of New York refused to endorse the change on its policy because of the assignment to the Illinois National

Bank, but agreed that they would endorse such change if the Illinois National Bank would sign a release of its existing assignment. This the Illinois National Bank refused to do and after considerable correspondence the Mutual Life of New York agreed to waive the release, provided the Illinois National Bank would join in the request for change of beneficiary by executing the same along with the insured, Arthur D. Mackie. Forms were prepared by the home office of the plaintiff, forwarded to Springfield, Illinois, and were signed by Arthur D. Mackie on the 8th day of May, 1937. The Illinois National Bank never signed the forms, although they were in its possession. At no time does it appear that the company ever required any further signature by Donald M. Mackie, the sole remaining requirement being the signature of the Illinois National Bank.

Arthur D. Mackie died on July 19, 1938. At the time of his death, he was indebted to the Illinois National Bank in the amount of $31,000. The bank collected the proceeds of the Franklin policy and applied them on the note, reducing the indebtedness to $6,000. The bank released, through its president, Mr. Coleman, the $55,000 Northwestern policy and delivered it to the widow, retaining as security for the balance due the policy in question here and certain stocks valued at $1,500. Following Arthur D. Mackie's death and the reduction of the loan by the proceeds of the Franklin policies, the bank filed a claim in Arthur D. Mackie's estate and also filed a certificate of the amount of indebtedness with the Mutual Life Insurance Company of New York. The executor of the estate filed proofs of death and claimed the proceeds of the Mutual Life policy involved here. The son, Donald M. Mackie, also claimed the proceeds of the Mutual Life policy. Thereupon this bill of interpleader was filed, the proceeds of the policy were paid into the hands of the clerk of this Court, and the parties interpleaded.

Counsel for the executor and the widow urge that the proceeds of this policy should be paid to the estate because the change of beneficiary naming Donald Mackie, which was executed by the insured in April, 1937, was never endorsed on the policy by the Mutual Life Insurance Company, and that Nancy Jane Mackie being deceased, and there being no contingent beneficiary, the proceeds of the policy should be paid to the estate.

Counsel for Donald M. Mackie insist that it was the intent of Arthur D. Mackie that his son, Donald M. Mackie, be the beneficiary of this policy, that the change in July, 1936, was merely for the purpose of evading the technical requirements of the insurance company, and in compliance with the suggestion of the insurance company's Springfield manager; that after the death of Nancy Jane Mackie the insured did everything that he should have done in order to have the proceeds of the policy paid to Donald Mackie and to designate him as the beneficiary; that it was due to the negligence or design of Mr. Coleman of the Illinois National Bank that the bank failed to join in the request for the change of beneficiary, and that the requested change signed by Arthur D. Mackie is as effective as though it had been endorsed by the Illinois National Bank and actually endorsed upon the policy by the Mutual Life Insurance Company. Further, that equity will carry out the intent of the insured and will not require a strict or complete compliance with the policy conditions where the insured has done everything that he should do in connection with the attempted change. Also that the filing of a bill of interpleader amounts to a waiver of the policy requirements and that the policy requirements being for the benefit of the insurer, no other party has the right to question the sufficiency of the change on the ground of non-endorsement.

■ There was testimony relative to various conversations between Arthur D. Mackie and Mr. Coleman of the Illinois National Bank, and between Arthur D. Mackie and the Springfield manager of the plaintiff. There was also a considerable amount of documentary proof consisting of correspondence between the home office of the plaintiff and its Springfield office, and between the Springfield office, the Illinois National Bank and Arthur D. Mackie. The documents and the testimony are somewhat in conflict and this court is guided by the writings.

"In an amorphous situation of this kind, the contemporary attitudes of the parties, especially if they are shown by documents and letters, must control, as they are the only safe guides to a trier of the facts." New York Life Ins. Co. v. Cross, D.C., 7 F.Supp. 130, at 132.

Counsel for the estate and the widow rely on a line of cases typified by Freund v. Freund, 218 Ill. 189, 75 N.E. 925, 109 Am.St.Rep. 283, a case holding that strict compliance with the terms of an insurance policy are necessary and that the change does not become effective until endorsed on the policy. This case has been criticized by many courts, including those of Illinois, and does not represent the weight of authority.

Donald Mackie relies on Sun Life Assurance Co. of Canada v. Williams, 284 Ill. App. 222, 1 N.E.2d 247, and a long line of similar cases which hold in effect that a change of beneficiary can be accomplished without a strict or complete compliance with the policy conditions requiring endorsement and that a failure to endorse such a change will not defeat it, if the insured has done everything reasonably within his power to effect the change; among other cases being: White v. White, Sup., 194 N.Y.S. 114; Ætna Life Ins. Co. v. Carney, 169 Misc. 992, 9 N.Y.S.2d 59; Holt v. Russell, 5 Cir., 30 F.2d 597; Arrington v. Grand Lodge, 5 Cir., 21 F.2d 914; Barrett v. Barrett, 173 Ga. 375, 160 S.E. 399, 78 A.L.R. 962.

■ The principles laid down in these cases are:

"The change, so far as any beneficiary is concerned, is effected when the insured in due form makes the change; the indorsement by the insuring company merely registers the name of the new beneficiary. * * *

"While a change of beneficiaries must be made under certain formalities for the protection of the insurer, yet, in cases where the company has waived defending by interpleading, and has paid the money into court, and has no further interest in the litigation between the parties, a far more liberal rule obtains, and that courts of equity seek to do that which the insured apparently intended to have done." Sun Life Assurance Co. of Canada v. Williams, supra [284 Ill.App. 222, 1 N.E.2d 249].

"If the insurer chose to waive or not insist on an objection to the sufficiency of the act of the insured manifesting his intention to change the beneficiary, based on a noncompliance with a requirement prescribed for its sole benefit, an objection on that ground was not available in favor of the original beneficiary. No one other

than the insurer had the right to question the sufficiency of the above set out instrument to effect a change of beneficiary, on the ground of noncompliance with the provision as to the method of effecting such change. Subject only to the right of the insurer to insist on compliance with the provision of its constitution as to the manner of effecting such change, such change could be effected by parol or by a written instrument manifesting the insured's intention to change the beneficiary. * * *

"The absence of any intention of the insurer to question the sufficiency of that instrument to effect a change of beneficiary was manifested by its paying the money into court and expressing a willingness that it be paid to either of the claimants." Arrington v. Grand Lodge, 5 Cir., 21 F.2d 914, 916.

■ Not only did Arthur D. Mackie object at the time he changed the beneficiary, eliminating all the contingent beneficiaries and naming Nancy Jane Mackie sole beneficiary for the purpose of meeting the technical requirements of the insurer that all beneficiaries must join in any assignment which he made to the Illinois National Bank, but he insisted after the change was made that it was his intent and desire that the proceeds of the policy be distributed under the original mode of settlement, which made provision for Donald Mackie if Nancy Jane Mackie died without issue. Subsequently, and after the death of Nancy Jane Mackie, on two separate occasions, he executed requests for change of beneficiary, naming Donald Mackie as beneficiary, and sent them with the policy to the home office of the insurer, where due to technical and unreasonable requirements made by the insurer, the insurer failed to endorse such changes. Arthur D. Mackie did everything that he should have done and all that he was required to do. No act on his part remained unperformed. In view of these circumstances and the overwhelming proof in this record of Arthur D. Mackie's intent, this court holds that Donald M. Mackie is entitled to the proceeds of this policy.

■ The estate and the widow have urged in support of their position that a strict compliance with the terms of the policy is necessary, that the policy contains a provision preventing a change of beneficiary while the policy is assigned. This, again, is a provision placed in the policy

for the sole benefit of the insurer and the same rule applies. Even though this assignment was absolute on its face, equity will look through the form.

"An assignment to secure a debt is not absolute where it is not clearly evidenced that it is so intended, especially where the premiums are charged to the debtor and an assignment which limits the extent of recovery and which is in effect one for security for advances will operate as a contract for security only. Again, although an assignment is absolute on its face, the entire transaction is a matter of inquiry by the court and the interest should be limited to the sum or amount which it was intended should be secured." Joyce on Insurance, page 3986.

"Whether an assignment is absolute in form or as collateral security, equity will regard the assignment as collateral security" if such be the fact. 37 C.J. 436; Ætna Life Insurance Co. v. Mason, D.C., 30 F.2d 715.

No one contends that as a matter of fact the assignment here was an absolute assignment. On its face, it appears that the assignment is only "as its interest may appear". The note which this policy secured recites that the policy is held as collateral security. Even though this court interpreted the policy provisions relative to change of beneficiary strictly and for the benefit of other parties than the insurer, the policy provision would not apply to an assignment which was merely a contract for collateral security, neither absolute on its face nor intended to be absolute by either party to the contract of assignment.

The question remaining for disposition is whether Donald M. Mackie shall receive only the funds now remaining in the hands of the Clerk of this Court, diminished by the amount which has been allowed by this court to the Illinois National Bank for the balance remaining due on Arthur D. Mackie's note, plus interest and attorney fees, or whether he shall also through the right of subrogation have a claim against the estate of Arthur D. Mackie, deceased, for the amount allowed to the Illinois National Bank and paid by this court out of said fund. The collateral which secured this note, as above related, was the policy in the amount of $55,000 in which the widow, Maud Mackie, is the primary beneficiary; the policy in question here, and certain stocks belonging to the estate of Arthur D. Mackie, deceased, of the value

of approximately $1,500; disregarding the Franklin Life Insurance policy in the amount of $25,000 about which there is no dispute and which was payable directly to the bank for the express purpose of application on Arthur D. Mackie's indebtedness, which policy has been collected by The Illinois National Bank and applied to the debt. The only encumbrance upon this policy was a pledge as collateral for a debt of the insured.

"Collateral means secondary or subsidiary. Such security is to be resorted to only in the event that the pledgor fails to perform the principal contract. A pledge as collateral security ex vi termini excludes the idea that the thing pledged is designed as the primary source from which payment is to be made." Barbin v. Moore, 85 N.H. 362, 159 A. 409, 415, 83 A.L.R. 62.

Cases have been cited by the parties on the question of subrogation where life insurance policies are pledged as security, including Farracy v. Perry, Tex.Civ.App., 12 S.W.2d 651.

■■ A reading of these cases will indicate that here again the determining factor is the intention of the insured. All the facts and circumstances, the purpose of the incurrence of the indebtedness with the Illinois National Bank; the provisions of the will; the manner in which the beneficiaries were named in the various policies; the requests for change of beneficiary which were almost identical in language; and all the other matters which have been brought to the attention of this court and appear in this record, lead to the irresistible conclusion that it was the intent of Arthur D. Mackie to treat these policies alike and that it was not his intent that his estate should be benefited to the detriment of the beneficiary of the Mutual Life of New York policy. While the bank, as creditor, had the right to look to such collateral as it chose and to release the Northwestern policy to the widow and make no claim thereto, yet such action on the part of the bank should not be allowed to defeat the plain intent of the deceased or to enable the bank to diminish Donald M. Mackie's funds, nor benefit the widow. The decree may provide for such subrogation.

A decree may enter in accordance herewith, providing that Donald M. Mackie is entitled to the proceeds of this policy in the hands of the clerk of this Court now

remaining after payment of the amount due the Illinois National Bank; and further providing that he may be subrogated to the rights of the Illinois National Bank in and to the note, the collateral, the claim against the estate heretofore filed by the Illinois National Bank for the amount of the principal, interest and attorney fees allowed by this court to the said the Illinois National Bank, together with interest to the date of payment thereof by the estate.

The decree shall also provide for costs to be taxed in favor of Donald M. Mackie against the Springfield Marine Bank, as executor, and Maud Mackie, intervening defendant.